UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GILROY PERCY MERRILL                                    CIVIL ACTION

VERSUS                                                            NO. 13-5834

ST. BERNARD PARISH PRISON ET AL.                  SECTION "S" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Gilroy Percy Merrill is a prisoner currently incarcerated in the River Correctional Center in Ferriday, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against the St. Bernard Parish Prison, Warden David Mowers and Lieutenant Shannon Desroche alleging that while incarcerated in the St. Bernard Parish Prison in Chalmette, Louisiana, he received inadequate medical care. He seeks injunctive relief.  Record Doc. No.1 (Complaint at ¶ IV and V).

On November 14, 2013, I conducted a telephone conference in this matter. Participating via telephone were plaintiff pro se and Mary Ann Hand, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

During the November 14, 2013, Spears hearing, Merrill testified that he was then incarcerated in the River Correctional Center in Ferriday, Louisiana, based upon his

September 10, 2013, conviction of possession with intent to distribute illegal drugs. He stated that he was serving a fifteen (15) year prison sentence.

He confirmed that the claims he makes in this case arise from his ten-week incarceration in the St. Bernard Parish Prison ("St. Bernard") from July 9, 2013, until his September 20, 2013, transfer to the River Correctional Center ("River"). He testified that he had received and reviewed a copy of his medical records defendants had previously produced, Record Doc. Nos. 9 and 21, and that they are substantially accurate.

As to his medical care, Merrill testified that he had two back molars that were broken and required extraction during his incarceration in St. Bernard. He explained that sometime in August 2013, he "begged [medical personnel at the jail] to please get them out" and that he was told by Lt. Desroche that his family must pay for such a procedure. He testified that before his arrest his teeth hurt, but that he had not seen a dentist because he could not afford to do so.

Merrill confirmed the indication in his medical records that the first time he received medical care at St. Bernard was on July 11, 2013, for treatment of his hypertension, heartburn, GERD (gastroesophageal reflux disease) and diabetes. He said that on August 2, 2013, he received dental attention from Dr. Truxillo for the first time. He indicated that Dr. Truxillo told him that his teeth were infected and were causing an increase in his blood pressure, and then prescribed ibuprofen and penicillin. Merrill

explained that the "regular deputies" gave him these medications and checked his blood pressure "on several occasions - at least two times a week - because this thing was hurting so bad."

When asked who diagnosed that extraction was required, Merrill named both Dr. Truxillo and Lt. Desroche. He testified that Lt. Desroche was chief of the medical department, and he thought that she was an EMT (emergency medical technician). Merrill also stated that he was given Orajel, antibiotics, and ibuprofen for his dental condition, but that the ibuprofen caused an increase in blood pressure, so he was switched to Tylenol.

When asked about the multiple medications the medical records indicate he began taking a few days after entering St. Bernard, Merrill stated that on July 10, 2013, his wife brought various medications for his existing conditions to him at St. Bernard, but that jail personnel refused to accept them because they had previously been opened. He said that jail personnel required his wife to obtain and deliver new, unopened prescriptions. Merrill testified that for this reason, he began taking the medications about four to five days after the commencement of his incarceration.

Merrill confirmed that the medications he took in St. Bernard included metoprolol and lisinopril for his high blood pressure; Tums Ultra for his GERD; bismuth tablets and Prilosec for blocking stomach acid; metformin and cinnamon for his diabetes; pravastatin for his high cholesterol; Milk of Magnesia, ibuprofen, and Zantac for his stomach pain;

3

palmetto supplement for his enlarged prostate gland; Centrum vitamins; and low dose aspirin. He confirmed that while incarcerated at St. Bernard, he was given these medications daily.

Merrill testified that he met with Dr. Truxillo twice and with Lt. Desroche about three times, but "at nighttime the ranking officers would come to get me to check my pressure - they checked my blood sugar one time." He stated that the officers checked his blood sugar insufficiently because it was only checked once, and he believed that it was supposed to be checked each morning and evening.

When asked about his dental conditions, he confirmed that since his transfer from St. Bernard to River the left molar had been removed, but the right molar had not. He stated that River personnel had given him a "dental pack," which consists of Tylenol and an antibiotic. He explained that he had previously received the same or a similar combination of medications at St. Bernard for a seven-day period, after which "nothing was done to correct the problem . . . and it was infected again and [Lt. Desroche] was going to give me antibiotics again." Merrill testified that he could not recall whether he actually received the antibiotics, but he said that Dr. Truxillo had given him Orajel and Tylenol, which lasted approximately four days.

Merrill summarized that his complaint about his dental care was that while he was incarcerated in St. Bernard, his teeth were not extracted and the treatment that he

received was ineffective.  Merrill also complained that he had not been provided with a diabetic diet and that his blood sugar was only checked once at St. Bernard.

On cross-examination, Merrill stated that he did not recall signing a medical and mental questionnaire upon entering St. Bernard on July 9, 2013.  Merrill stated, "I know for sure I told them all of my medical problems and the dental problem."

Shortly after the Spears hearing, Merrill sent a written submission to the court, Record Doc. No. 23, to which he attached "a copy of the last of the dental work I need[ed] during my incarceration at St. Bernard Parish Prison that I have finally gotten properly handle[d] during my incarceration here at River Correctional Center."  The attachment was a medical record from Haygood Dental Clinic in Vidalia, Louisiana, indicating that on November 20, 2013, an infected tooth had been removed and that he had been prescribed cephalexin and Ultram for post-extraction administration. In that submission, he described his complaints about his dental care at St. Bernard as "neglect and/or failure" to take him to the LSU Hospital for earlier extraction of his teeth.

## ANALYSIS

I. STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis.  28 U.S.C. § 1915A(a); Martin v. Scott, 156 F.3d 578, 579-80

(5th Cir. 1998). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim. 28 U.S.C. § 1915A(b)(1).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the

actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint should be dismissed under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1), either as legally frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as explained by his testimony at the Spears hearing, fails to state a cognizable claim of violation of Merrill's constitutional rights, even under the broadest reading.[1]

---

[1]The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011), cert. denied, 132 S. Ct. 1746 (2012) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

II.   <u>MEDICAL CARE</u>

Merrill was a pretrial detainee for part of the time and a convicted prisoner for the remainder of the period about which he complains about his medical care.  He asserts that (1) the dental care he received was ineffective and his teeth were not pulled during his ten-week incarceration in St. Bernard, and (2) the medical care he received for his diabetes was inadequate because his blood sugar was only checked once and he was not provided with a diabetic diet.

Before the Fifth Circuit's decision in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest.  <u>Bell v. Wolfish</u>,  441 U.S. 520, 539 (1979); <u>Cupit v. Jones</u>, 835 F.2d 82, 85 (5th Cir. 1987); <u>Mayweather v. Foti</u>, 958 F.2d 91 (5th Cir. 1992).  The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees."  <u>Pfannstiel v. City of Marion</u>, 918 F.2d 1178, 1186 (5th Cir. 1990), <u>abrogated on other grounds as recognized in Martin v. Thomas</u>, 973 F.2d 449, 455 (5th Cir. 1992).

In <u>Hare</u>, however, the Fifth Circuit held:

(1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection

9

from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645.  If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Shepherd v. Dallas County, 591 F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes

conduct proscribed by the Eighth Amendment. Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The Farmer definition applies to Eighth Amendment medical claims. Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs." Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that the defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could

11

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d 447, 458-59 (5th Cir. 2001)). "Such a showing requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009), cert. denied, 130 S. Ct. 3368 (2010) (quoting Domino v. Texas Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 1391 (1997) . . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); accord Tamez, 589 F.3d at 770. "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in Hare are at issue. See Tamez, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with

immediate medical treatment qualifies as an 'episodic act or omission'"). Therefore, the "deliberate indifference" standard applies, and Merrill must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, plaintiff wholly fails to allege facts sufficient to satisfy any of the essential elements of his claim, including especially the stringent "deliberate indifference" standard.

Initially, it cannot be concluded that plaintiff's conditions presented serious medical needs that posed a substantial risk of harm during Merrill's incarceration at St. Bernard. Neither Merrill's testimony nor his medical records concerning his diabetes and dental care identified any actual risk of serious harm or any actual serious harm resulting from the alleged inadequate treatment sufficient to rise to the level of serious medical needs for purposes of constitutional analysis. See Harrison v. Barkley, 219 F.3d 132, 137 (2d Cir. 2000) ("Ordinarily, a tooth cavity is not a serious medical condition" and treatment "can safely be delayed."); Martin v. Tyson, 845 F.2d 1451, 1457-58 (7th Cir. 1988) (delay in treating broken tooth not sufficiently serious); Mosely v. Highsmith, No. 4:07-CV-1578, 2008 WL 294484, at *2 (E.D. Mo. Jan. 31, 2008) (installing a crown not a serious medical need); O'Connor v. McArdle, No. 04-CV-314, 2006 WL 436091, at *6, *9 (N.D.N.Y. Feb. 22, 2006), aff'd, 217 F. App'x. 81 (2d Cir. 2007) (Inmate's request for a replacement permanent bridge was not a serious medical need when he received ongoing dental treatment, his dentist did not recommend a replacement bridge

and plaintiff did not allege any demonstrable physical injury or effect on his activities of daily living.).  Neither his medical records nor his testimony indicate that the non-diabetic diet and minimal blood sugar testing had any deleterious effect on his physical condition, especially in light of his acknowledgment that he was able to take his diabetes medication during his St. Bernard incarceration.

Even assuming, however, but certainly without concluding, that plaintiff's conditions presented serious medical need for constitutional purposes, Merrill has alleged facts, confirmed by his testimony and the verified medical records, that negate any inference of deliberate indifference by St. Bernard jail officials. His complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated in the St. Bernard Parish Prison.

Merrill testified and the medical records confirmed that while in St. Bernard, he was seen by a physician and other medical personnel and provided daily with metoprolol and lisinopril for his high blood pressure; Tums Ultra for his GERD; bismuth tabs and Prilosec for blocking stomach acid; metformin and cinnamon for his diabetes; pravastatin for his high cholesterol; Milk of Magnesia, ibuprofen, and Zantac for his stomach pain; palmetto supplement for his enlarged prostate gland; Centrum vitamins; and low dose aspirin.  See Brightwell v. Lehman, 637 F.3d 187,  194 (3d Cir. 2011) (prison official's failure to provide diabetic diet to diabetic inmate was not deliberate indifference when

inmate "received appropriate accommodations and regular medical screenings"); Radunz v. Muhlhausen, 375 F. App'x 618, 620-21(7th Cir. 2010) (no deliberate indifference when inmate received regular medication); Cody v. CBM Corr. Food Servs., 250 F. App'x 763, 765 (8th Cir. 2007) (summary judgment was proper on inmate's claim that defendant failed to provide him with a special diabetic diet, as ordered by the doctor, when inmate presented no evidence of immediate danger to his health or that his health suffered due to failure to provide prescribed diet); Harris v. Donaldson, 71 F.3d 876, 1995 WL 725438, at *2 (5th Cir. Nov. 3, 1995) (no deliberate indifference when prisoner received medication for diabetes, rendering his Section 1983 medical care claim merely a "quarrel with the quality and quantity of his medical treatment" for diabetes).

Although Merrill experienced delay and expressed dissatisfaction with the type and quality of his dental care, it is clear that he received constitutionally adequate dental attention at St. Bernard.  He was seen by a doctor, provided with antibiotics, pain medication and Orajel. Thus, this record does not support an inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense.

In essence, Merrill has alleged delay of approximately four months between his initial incarceration in St. Bernard and the date on which his tooth was extracted at River Correctional Center in receiving the dental care he desired, and he has expressed dissatisfaction with the overall speed, quality and effectiveness of treatment.  None of

these allegations rise to the level of deliberate indifference necessary to establish a

constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example
> of a <u>matter</u> <u>for</u> <u>medical</u> <u>judgment</u>. A showing of deliberate indifference
> requires the prisoner to submit evidence that prison officials refused to treat
> him, ignored his complaints, <u>intentionally</u> treated him incorrectly, or
> engaged in any similar conduct that would clearly evince a wanton
> disregard for any serious medical needs. Deliberate indifference is an
> extremely high standard to meet.

<u>Gobert</u>, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis

added).  No such showing has been made on the current record.  The decisions made by

the treating medical providers concerning when and how to render the care that they

gave, including for example providing dental examinations and prescribing antibiotics,

ibuprofen and Tylenol in lieu of extraction were classic examples of the exercise of

"medical judgment," which, even if incorrect, cannot serve as the basis for a finding of

deliberate indifference in the constitutional sense.

Mere delay in receiving care is not in and of itself a constitutional violation.

<u>Easter v. Powell</u>, 467 F.3d 459, 463 (5th Cir. 2006); <u>Mendoza</u>, 989 F.2d at 195; <u>Wesson</u>

<u>v. Oglesby</u>, 910 F.2d 278, 284 (5th Cir. 1990).  Regardless of the length of delay,

plaintiff at a minimum must show deliberate indifference to serious medical needs.

<u>Wilson</u>, 501 U.S. at 298. No such showing can be made in this case in light of the

attention Merrill received for his dental problems during his incarceration in St. Bernard.

Contentions like Merrill's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence ["neglect" as he calls it in his most recent submission] do not give rise to a Section 1983 claim.   "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." <u>Stewart v. Murphy</u>, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does <u>not</u> constitute deliberate indifference, even if treatment was negligently administered); <u>Rowe v. Norris</u>, 198 Fed. Appx. 579, 581 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); <u>see also</u> <u>Estelle</u>, 429 U.S. at 107 (The "question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.   A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.   At most, it is medical malpractice . . . ."); <u>Corte v. Schaffer</u>, 24 F.3d 237, 1994 WL 242793, at *1 (5th Cir. 1994) (Contrary to plaintiff's allegation that he had received "no treatment" because he believed he needed a referral to a specialist, he failed to demonstrate deliberate indifference when he was seen by prison medical personnel with results being within a normal range.); <u>Marksberry v. O'Dea</u>, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and

medication); <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 193 (5th Cir. 1993) (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); <u>Varnado v. Lynaugh</u>, 920 F.2d 320, 321 (5th Cir. 1991) (plaintiff, who was 18 months post-surgical implantation of hip prosthesis, who complained of pain in his hip and who was ultimately diagnosed with broken wires in the prosthesis, failed to state a claim for deliberate indifference when he was seen by medical personnel "numerous times for problems relating to his hip."); <u>Wesson v. Oglesby</u>, 910 F.2d 278, 284 (5th Cir. 1990) (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs rising to the level of a violation of his constitutional rights.  For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

III.   <u>PRISON DEFENDANT</u>

In his complaint, Merrill named the St. Bernard Parish Prison as a defendant. However, a prison or jail are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not "persons" for purposes of suit under Section 1983, as the statute and case law define that term. <u>Cage v. Kent County Corr. Facility</u>, 113 F.3d 1234, 1997 WL 225647,

at *1 (6th Cir. 1997); <u>Johnson v. LCDC Med. Staff</u>, No. 4:09-cv-13, 2009 WL 1256906, at *2 (E.D. Tenn. Apr. 29, 2009); <u>Holifield v. Mobile County Sheriff's Dep't</u>, No. 07-0321-CG-C, 2008 WL 2246961, at *5 (S.D. Ala. May 29, 2008); <u>Cullen v. DuPage County</u>, No. 99C1296, 1999 WL 1212570, *1 (N.D. Ill. Dec. 14, 1999); <u>Whitley v. Westchester County Corr. Facility Admin.</u>, No. 97CIV0420(SS), 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); <u>Sponsler v. Berks County Prison</u>, No. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. 1995); <u>Powell v. Cook County Jail</u>, 814 F. Supp. 757, 758 (N.D. Ill. 1993).  Thus, Merrill can assert no claim against the prison under Section 1983.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's Section 1983 complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v.</u>

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this ___22nd___ day of January, 2014.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.